Stewart Bernstiel Rebar & Smith
George McClellan, Esq.
100 Overlook Place, Second Floor
Princeton, New Jersey 08540
Telephone: 609.375.2070
eFax: 888.761.8299

Attorneys for Defendant
Great Northern Insurance Company

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| In the Matter of: <br><br> DGI SERVICES, LLC, <br><br><br><br> Debtor. | IN PROCEEDING UNDER CHAPTER 7 OF THE U.S. BANKRUPTCY CODE <br><br> CASE NO. 11-46042/JNP |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE
COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

I.   Introduction .................................................................................................................. 1

II.  Factual Background ..................................................................................................... 3

    A.   Relevant Appointments ...................................................................................... 3

    B.   Relevant Proceedings In The Superior Court Litigation ...................................... 4

        1.   Submission of Proofs of Loss in the Superior Court Litigation ................. 4

        2.   Ms. McMackin's Efforts to Conceal Records in the Superior Court
           Litigation ................................................................................................... 5

    C.   Material Misrepresentations Made by Ms. McMackin That Were Exposed by the
        Previously Concealed Records ........................................................................... 6

        1.   Misrepresentations and Concealment Related to Old Aultsville ................ 6

        2.   Misrepresentations and Concealment Related to Management Fees ......... 8

        3.   Additional Misrepresentations and Concealment ..................................... 9

III. Legal Argument ........................................................................................................... 9

IV.  Conclusion ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. United States,* 520 F.2d 1027 (5th Cir. 1975) .......................................................... 10

*Barton v. Barbour*, 104 U.S. 126 (1881) ........................................................................................ 9

*In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012) .......................................................... 9, 10

*Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163 (2006) ..................................................................... 11

*McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012) ......................................................................... 10

*Merin v. Maglaki*, 126 N.J. 430 (1992) ........................................................................................ 11

**Statutes**

N.J.S.A. 17:33A-1 *et seq.* (New Jersey Insurance Fraud Prevention Act) ............................ passim

I. **Introduction**

On February 25, 2013, Linda L. McMackin ("Ms. McMackin") — in her capacity as the Trustee in In the Matter of: DGI Services, LLC Chapter 7 bankruptcy proceeding — instituted litigation in the Law Division of the Superior Court of New Jersey in Gloucester County, under docket number GLO-L-315-13 (the "Superior Court Litigation"), against Great Northern Insurance Company ("Great Northern"). In the Superior Court Litigation, Ms. McMackin seeks to recover proceeds from an insurance policy (the "Policy") that Great Northern issued to DGI Services, LLC ("DGI") for lost business income allegedly resulting from a loss that occurred at DGI's Swedesboro, New Jersey facility on November 13, 2011.

In the Superior Court Litigation, Ms. McMackin — with the assistance of her agents Stephen R. Dumser, Esq. (her special counsel); Robert N. Snyder, Jr. (her accountant); Philip Melillo (her public adjuster); and Bruce Rifkin (the public adjuster's forensic accountant) — embarked upon a pervasive pattern and practice of misrepresentations and concealment in support of her claim for insurance proceeds. The extent of this course of conduct came to light on November 10, 2016 — when she finally complied with the Order of the Superior Court of New Jersey to produce the records that she had concealed for years. For instance, in sworn documents that Ms. McMackin submitted to Great Northern, she represented that DGI continued to incur expenses for which she seeks to recover insurance proceeds. The records that she concealed until November 10, 2016, however, prove that this representation was false and misleading and that she knew that this representation was false and misleading at the time that she made this representation. By way of a second example, Ms. McMackin inflated by millions of dollars the amounts of continuing expenses for loan interest and management fees for which she seeks to recover insurance proceeds. Likewise, she concealed records that would have revealed the fact

1

that she misrepresented the amounts of the loss as well as the fact that she knew the representations were false and misleading at the time that she made the misrepresentations. Finally, the concealed records reveal that Ms. McMackin knowingly made a material misrepresentation to the Superior Court and Great Northern in May 2013 when she represented in briefing and during oral argument that Dean Topolinski (the sole shareholder of Canal Brief, Inc., which is the sole shareholder of DGI) was not responsible for Old Aultsville (the company owned by Mr. Topolinski's father-in-law and for which Ms. McMackin claimed millions of dollars in insurance benefits). Not only did Ms. McMackin misrepresent this critical fact to the Superior Court of New Jersey and Great Northern, Ms. McMackin concealed the records that would have shown her representation to be false and misleading and that she knew it was false and misleading at the time that she made the representations. In sum, these misrepresentations and concealments, among other things, violate the New Jersey Insurance Fraud Prevention Act (the "IFPA"), N.J.S.A. 17:33A-1 *et seq.*

      Notably, the *Barton* doctrine requires a party seeking to institute litigation against an official appointed by a federal court to seek leave of the appointing court before instituting the proposed litigation. Because this Court appointed Ms. McMackin and the aforementioned agents who assisted her in violating the IFPA, Great Northern must obtain leave from this Court before instituting litigation in the Superior Court Litigation against Ms. McMackin and her agents. Great Northern, therefore, respectfully submits this Memorandum of Law in support of Great Northern's motion for leave to file in the Law Division of the Superior Court of New Jersey, Gloucester County, under docket number GLO-L-315-13, the following proposed pleading, a true and accurate copy of which is attached as Exhibit 1 to the Certification of George McClellan ("McClellan Cert."):

(1) a counterclaim against Linda L. McMackin for violations of the IFPA;

(2) a third party complaint against Stephen R. Dumser, Esq.; Robert N. Snyder, Jr.; Philip Melillo; and Bruce Rifkin for violations of the IFPA.

As explained in more detail below, Great Northern has demonstrated that its proposed causes of action against Ms. McMackin and the aforementioned agents are "not without foundation." Moreover, as explained in detail below, the records that Ms. McMackin has produced in the Superior Court Litigation prove the allegations pleaded by Great Northern. Accordingly, Great Northern respectfully submits that it is appropriate for this Court to grant leave to Great Northern to hold Ms. McMackin and the aforementioned agents accountable for the pervasive pattern and practice of insurance fraud upon which they embarked several years ago before the Superior Court of New Jersey.

## II. Factual Background
### A. Relevant Appointments

On December 21, 2011, DGI's creditors instituted an involuntary Chapter 7 bankruptcy petition. *See* 11-bk-46042, Dkt. No. 1. On January 17, 2012, this Court appointed Ms. McMackin as the trustee in the Chapter 7 bankruptcy of DGI. *See* 11-bk-46042, Dkt. No. 35, 41. On January 18, 2012, this Court appointed the accounting firm Sharer Petree Brotz & Snyder as accountants to "prepare all necessary bankruptcy estate income tax returns, and to provide Trustee with general tax and accounting advice, as necessary, forensic accounting services and assistance with computer data recovery." *Id.*, Dkt. No. 39, 55. On February 29, 2012, this Court appointed Stephen R. Dumser, Esq. ("Mr. Dumser") of the law firm Swartz Campbell as special counsel to Ms. McMackin for the purpose of "investigating and prosecuting the insurance claim for money damages arising out of physical damage sustained to the equipment of [DGI] which occurred on or about November 13, 2011." *See id.*, Dkt. No. 103. On March 27, 2012, this Court appointed

3

Mr. Philip E. Melillo ("Mr. Melillo") as a public adjuster for DGI for the purpose of "investigating and prosecuting the insurance claim for money damages arising out of physical damage sustained to the equipment of [the bankrupt estate] which occurred on or about November 13, 2011 and any associated loss of income. [Mr. Melillo] will evaluate and quantify the losses sustained by [the bankrupt estate], arrange for expert proofs with respect to values and prepare the formal Proof of Loss. [Mr. Melillo] will work in tandem with Special Counsel, Stephen R. Dumser/Swartz Campbell, LLC." *Id.*, Dkt. No 117. Mr. Melillo retained Mr. Bruce Rifkin ("Mr. Rifkin") as a forensic accountant to assist, among other things, in the preparation of the income loss claim.

### B. Relevant Proceedings In The Superior Court Litigation
#### 1. Submission of Proofs of Loss in the Superior Court Litigation

On February 25, 2013, Ms. McMackin commenced the Superior Court Litigation. *See* McClellan Cert., Ex. 2. Even though the loss for which Ms. McMackin sought to recover benefits occurred on November 13, 2011, *see id.*, Ex. 2, by September 2014 (nearly three years later), she failed to submit to Great Northern a proof of loss and documentation in support of a claim for insurance proceeds for allegedly lost business income. *See id.*, Exs. 3, 4. Accordingly, the Superior Court ordered Ms. McMackin to submit to Great Northern the proof of loss and supporting documentation for her income loss claim. *See id.*, Ex. 3. Pursuant to the Order of the Superior Court, on October 21, 2014, Ms. McMackin submitted her Sworn Statement in Proof of Loss (the "POL") for the income loss claim. *See id.*, Ex. 4. On December 15, 2014, she submitted a spreadsheet (the "December 15, 2014 Spreadsheet") because her POL did not contain her "entire submission." *See id.*, Ex. 5. On May 13, 2015, Ms. McMackin submitted a Sworn Statement in Proof of Loss: Amended (the "Amended POL"). *See id.*, Ex. 6. In each of these sworn documents, Ms. McMackin represented that from November 14, 2011 through

4

November 14, 2014, DGI continued to incur millions of dollars in expenses including $11,787,582.00 in interest on a loan from Old Aultsville and $13,485,000.00 in management fees. *See id.*, Exs. 4, 5, 6.

### 2. Ms. McMackin's Efforts to Conceal Records in the Superior Court Litigation

In the Superior Court Litigation, on July 16, 2015, Great Northern sent Ms. McMackin a list of approximately 3,000 records that Great Northern had previously requested but that she had concealed. *See id.*, Ex. 9. Working under the supervision of Special Master Francis J. Orlando, Jr., Esq., A.J.S.C. (ret.) ("Special Master Orlando"), who the Superior Court of New Jersey appointed to resolve discovery disputes, the parties endeavored to resolve amicably Ms. McMackin's legal obligation to produce the concealed records, but Ms. McMackin refused to produce the records that she had concealed. *See id.*, Ex. 10. Great Northern subsequently moved to dismiss the Complaint for violating the New Jersey Court Rules and for summary judgment for failure to cooperate with Great Northern's claim investigation. *See id.*, Ex. 11. Ms. McMackin cross-moved for a protective order. *See id.*, Ex. 12. In an Order dated November 20, 2015, this Court memorialized its ruling denying Ms. McMackin's cross-motion for a protective order and referred future discovery disputes to Special Master Orlando. *See id.*, Ex. 13.

Although Ms. McMackin continued to conceal records, in an Order dated January 20, 2016, Special Master Orlando ordered her to produce or schedule on a privilege log records from Sharer Petree Brotz & Snyder. *See id.*, Ex. 14. On April 22, 2016 — nearly one month late — Ms. McMackin produced her final privilege log. *See id.*, Ex. 15. Great Northern then indicated that it would move to compel the production of these records. *See id.*, Ex. 16. Before Great Northern filed this motion, Ms. McMackin admitted for the first time that DGI did not continue to incur the expenses as she had represented. *See id.*, Ex. 17. Instead, Ms. McMackin admitted

the expenses were ones that she believed DGI would have incurred, but did not actually incur. *See id.*, Ex. 17. Shortly thereafter, Great Northern moved to compel the records from Sharer Petree Brotz & Snyder for which Ms. McMackin had asserted the privilege or protection. *See id.*, Ex. 18. In an Order dated September 9, 2016, Special Master Orlando ordered Ms. McMackin to produce certain records for which Ms. McMackin had asserted privilege or protection. *See id.*, Ex. 19. Ms. McMackin then moved this Court to reject the portion of Special Master Orlando's September 9, 2016 Order that compelled her to produce records for which she asserted the attorney-client privilege. *See id.*, Ex. 20. In an Order dated November 2, 2016, this Court denied (with an exception to two records that is not relevant) the motion to reject the September 9, 2016 Order. *See id.*, Ex. 21. On November 10, 2016, Ms. McMackin produced — for the first time — over 1,000 pages of records from her accountants. *See id.*, Ex. 22.

      **C.**    **Material Misrepresentations Made by Ms. McMackin That Were Exposed by the Previously-Concealed Records**
             **1.**    **Misrepresentations and Concealment Related to Old Aultsville**

As set forth above, in her October 21, 2014 POL, December 15, 2014 Spreadsheet, and Amended POL, Ms. McMackin represented that from November 14, 2011 through November 14, 2014, DGI continued to incur expenses in the amount of $11,787,582 for interest on a loan from Old Aultsville. *See id.*, Exs. 4, 5, 6. Ms. McMackin represented that the amount of the interest was based on a principal loan balance of approximately $22.1 million to $24.9 million. *See id.*, Exs. 4, 5, 6. On August 12, 2013, in a certification that Ms. McMackin signed under the penalty of perjury, however, she certified that as of January 1, 2012, the principal loan balance was only $14,461,680.00 and that there were no post-petition claims for interest. *See* 11-bk-46042, Dkt. No. 302-2 at ¶23. Ms. McMackin's representation that the principal loan balance was approximately $22.1 to $24.9 million, therefore, was false and misleading.

6

Likewise, the records that Ms. McMackin concealed until November 10, 2016 demonstrate that her accountants determined that the value of the principal balance was substantially lower than that which Ms. McMackin represented to Great Northern in her POL, December 15, 2014 Spreadsheet, and Amended POL. Specifically, on July 27, 2012, Paul Pflumm, Esq. prepared a memorandum that outlined a potential settlement with Old Aultsville. *See* McClellan Cert., Ex. 23. This memorandum proves that Ms. McMackin's accountants determined that the principal loan balance as of December 31, 2011 was negative $4,618,644.57. *See id.*, Exs. 23, 24. Stated differently, Old Aultsville actually owed $4,618,644.57 to DGI. *See id.*, Exs. 23, 24. Ms. McMackin, therefore, knew that her representation to Great Northern that the principal loan balance was approximately $22.1 to $24.9 million was false and misleading. In addition, the twelfth attachment to the July 27, 2012 memorandum reflects that no interest accrued after December 1, 2011. This demonstrates that Ms. McMackin knew that her representation that DGI continued to incur expenses to pay the interest was false and misleading.

Great Northern uncovered additional evidence that corroborates that Ms. McMackin knew that she misrepresented both the fact that DGI continued to incur expenses for interest on the Old Aultsville loan as well as the amount of the continuing expense. Specifically, on November 26, 2013, Mr. Dumser sent an email to Mr. Snyder requesting that Mr. Snyder prepare the interest calculation for the Old Aultsville loan for Ms. McMackin's income loss claim. *See* 11-bk-46042, Dkt. No 494-2 at p. 56. The next day, on November 27, 2013, Mr. Dumser had a telephone conference with Mr. Snyder about including the interest from the Old Aultsville loan in Ms. McMackin's income loss claim and about "judicial estoppel." *See id.*, Dkt. No. 538-3 at p. 8. That same day, Mr. Dumser sent Mr. Snyder an email regarding a "clarification of legal issue on conflicting positions …." *Id.*, Dkt. No. 494-2 at p. 57. Eight days later, on December 5, 2013,

7

Mr. Snyder reviewed schedules and computations in the "proof of claim" prepared by Mr. Rifkin. *See id.*, Dkt. No. 494-2 at p. 61. After reviewing Mr. Rifkin's schedules and computations, Mr. Snyder then modified an "internal schedule to project post-incident interest" and "add[ed] payments reflected on proof of claim …." *Id.*, Dkt. No 494-2 at p. 61.

In the Superior Court Litigation, Great Northern requested that Ms. McMackin produce Mr. Dumser's emails to Mr. Snyder about this topic as well as any replies that Mr. Snyder may have sent to Mr. Dumser. Great Northern also requested that Ms. McMackin produce the versions of the internal schedule that Mr. Snyder maintained both before and after he modified the internal schedule. In response, Ms. McMackin continues to conceal these critical records.

### 2. Misrepresentations and Concealment Related to Management Fees

As set forth above, in her POL, December 15, 2014 Spreadsheet, and Amended POL, Ms. McMackin represented that from November 14, 2011 through November 14, 2014, DGI continued to incur expenses for management fees in the amount of $13,485,000.00. *See* McClellan Cert., Exs. 4, 5, 6. The records that Ms. McMackin concealed until November 10, 2016 demonstrate that her accountants determined that the value of the management fees upon which Ms. McMackin's representation is based was substantially lower than that which Ms. McMackin represented to Great Northern. Specifically, in a draft complaint that Ms. McMackin directed Mr. Pflumm to prepare with assistance from Mr. Snyder, Ms. McMackin argued that DGI had overpaid management fees in the amount of $1,426,364.90. *See id.*, Ex. 26. Ms. McMackin, however, included this amount in her representation as to the amount of management fees that DGI continued to incur.

8

### 3. Additional Misrepresentations and Concealment

When Ms. McMackin instituted the Superior Court Litigation, she moved the Superior Court to proceed summarily. The Superior court denied her motion. On May 8, 2013, after the Superior Court had denied her motion, Ms. McMackin moved the Superior Court to reconsider its denial of her motion to proceed summarily. *See id.*, Ex. 7. Ms. McMackin moved the Superior Court to reconsider because she maintained that Mr. Topolinski would not benefit from any insurance payment to DGI. *See id.*, Ex. 7 (at pages 2-3 of the un-paginated memorandum of law). Ms. McMackin represented that Mr. Topolinski had "no ownership interest in Old Aultsville LLC." *Id.*, Ex. 7 (at page 3 of the un-paginated memorandum of law). Likewise, on May 24, 2013, during oral argument for Ms. McMackin's motion for reconsideration, Mr. Dumser represented that, "[t]here is [sic] no documents and nothing that suggests Topolinski or – Brief – Canal Brief were guarantors of Old Aultsville." *See id.*, Ex. 8 at 5:10-12. The records that Ms. McMackin concealed until November 10, 2016, however, demonstrate that these representations were false and misleading. Specifically, Ms. McMackin determined that Mr. Topolinski was, in fact, "responsible" for Old Aultsville, *see id.*, Ex. 23 at p. 9, n. 17, and supported that determination with documents that she deliberately concealed from the Superior Court and Great Northern. *See id.*, Ex. 25.

### III. Legal Argument

The *Barton* doctrine provides that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881); *see also In re VistaCare Grp., LLC*, 678 F.3d 218, 225 (3d Cir. 2012). A party seeking leave to file litigation outside of the appointing forum against a bankruptcy trustee for acts committed in her official capacity "must make a prima facie case against the trustee, showing that its claim is not without foundation." *Id.* at 232. The "not without foundation" standard is

9

similar to the standard under a motion to dismiss, but has a "greater degree of flexibility." *Id*. at 232. Courts balance the interests of all parties involved and whether the other tribunal may have expertise regarding the issues in the proposed suit. *See id* at 233. Permission "'ordinarily should be granted unless it is clear that the claim is without foundation.'" *See id.* at 233 (quoting *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975)). Leave of the bankruptcy court has also been required before instituting litigation against agents who have provided services to the trustee. *See, e.g., McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012).

As described above, Great Northern's proposed counterclaim against Ms. McMackin and proposed third party complaint against Messrs. Dumser, Snyder, Melillo, and Rifkin for violations of the IFPA clearly satisfies the "not without foundation" threshold. The allegations in Great Northern's proposed counterclaim and third party complaint are pleaded with an excruciating amount of detail as to what misrepresentations were made, what records were concealed, who made the misrepresentations, who concealed the records, when the misrepresentations were made, when the records were concealed, where the misrepresentations were made, who knew the misrepresentations were false and misleading, and how Ms. McMackin and her agents knew that the representations were false and misleading. *See* McClellan Cert., Ex. 1. Moreover, the proposed counterclaim and third party complaint are supported by records that Ms. McMackin concealed until November 10, 2016. *See id.*, Exs. 23-26. These records show that she knew that material representations (outlined in detail above) that she made in support of her claim for insurance proceeds were false and misleading. The probative value of these records explains why she (1) concealed the very existence of the records until July 2015, when Great Northern caught her concealing them, and (2) continued to conceal the records for over one year after she was caught. *See id.*, Exs. 9, 10. Her continued

10

concealment forced Great Northern to embark upon lengthy, complex motion practice before the Superior Court to obtain these concealed records. *See id.*, Exs. 11, 18. After conducting an *in camera* review of a subset of these records, the Superior Court vindicated Great Northern's position by ordering Ms. McMackin to produce the records. *See id.*, Exs. 13, 14, 19, and 21.

Moreover, denying Great Northern's motion would result in an injustice. The New Jersey Supreme Court has recognized that insurance fraud is "a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates." *Merin v. Maglaki*, 126 N.J. 430, 436 (1992). The New Jersey Insurance Fraud Prevention Act is, "a comprehensive statute designed to help remedy high insurance premiums which the Legislature deemed to be a significant problem." *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 172 (2006). The New Jersey Supreme Court has recognized the Legislature's purpose in enacting the IFPA:

> to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims.

*Id.* at 172. Thus, preventing Great Northern from bringing a cause of action against Ms. McMackin and Messrs. Dumser, Snyder, Melillo, and Rifkin will frustrate both the purpose of the IFPA as well as Great Northern's statutory protection that Great Northern should receive against insurance fraud. This Court should not brandish its imprimatur on the course of conduct upon which Ms. McMackin and Messrs. Dumser, Snyder, Melillo, and Rifkin have embarked over the past four years before the Superior Court of New Jersey. In addition, it is important to note that the Superior Court of New Jersey has a particular expertise with the facts and circumstances of Ms. McMackin's and her agents' course of conduct because those actions have transpired over the past nearly four years in the Superior Court Litigation and in response to the

11

Orders promulgated by the Superior Court. Not only has the Superior Court devoted substantial resources (including, but not limited to, the appointment of a special master solely to resolve discovery disputes between the parties) to adjudicating the dispute instituted by Ms. McMackin almost four year ago, but the Superior Court is uniquely situated to adjudicate, for example, the frauds perpetrated by Ms. McMackin and her agents when they misrepresented material facts to the Superior Court itself.

Great Northern, therefore, respectfully submits that this Court should grant Great Northern permission to file a counterclaim against Ms. McMackin and a third party complaint against Messrs. Dumser, Snyder, Melillo, and Rifkin for violations of the IFPA.

### IV.     Conclusion

For the reasons set forth above, Great Northern Insurance Company respectfully requests that this Court grant Great Northern's motion for leave to file in the Law Division of the Superior Court of New Jersey, Gloucester County, under docket number GLO-L-315-13, a counterclaim against Linda L. McMackin for violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. §17:33A-1 *et seq*. and a third party complaint against Stephen R. Dumser, Esq.; Robert N. Snyder, Jr.; Philip Melillo; and Bruce Rifkin for violations of the the New Jersey Insurance Fraud Prevention Act, N.J.S.A. §17:33A-1 *et seq*.

        **STEWART BERNSTIEL REBAR & SMITH**
        Attorneys for Great Northern Insurance Company

        /s/ George McClellan
        George McClellan
        100 Overlook Center, Second Floor
        Princeton, NJ 08540
        609.375.2070
        888.761.8299 (fax)
        gmcclellan@sbrslaw.com