NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
JUN 26 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------X

IN RE:

DGI SERVICES, LLC,

    Debtor.

-------------------------------------------------X

CASE NO. 11-46042 (JNP)

CHAPTER 7

**OPINION**

**APPEARANCES:**

Andrea Dobin
Trenk DiPasquale, et al.
427 Riverview Plaza
Trenton, NJ 08611
*Attorneys for the Trustee, Linda L. McMackin*

George McClellan
Stewart Bernstiel Rebar & Smith
100 Overlook Center, Second Floor
Princeton, NJ 08540
*Attorneys for Great Northern Insurance Company*

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

    Before the Court is the Motion (the "Motion") of Great Northern Insurance Company ("Great Northern") for leave under the Barton Doctrine to file a counterclaim and third-party complaint against the Trustee, Linda McMackin, and her agents (collectively, the "Trustee"). Great Northern alleges the Trustee engaged in fraud, misrepresentation, and concealed documents from Great Northern in litigation pending in the Superior Court of New Jersey. The Trustee opposed the Motion, arguing that Great Northern fails to show that its allegations make a

1

prima facie case against the Trustee, and that a balancing of interests of all parties militates in the Trustee's favor. In addition, the Trustee cross-moved to bar Great Northern from asserting an affirmative defense of fraud (the "Cross-motion"). For the reasons discussed herein, Great Northern's Motion is DENIED and the Trustee's Cross-motion is GRANTED.

## I.  Background

In 2010, Dean Topolinski purchased the business known as DGI (the "Debtor") in a distressed sale which resulted in the assets being owned by the Debtor and subject to a lien of Old Aultsville, LLC ("Old Aultsville"). The Debtor was owned by an Ontario company controlled by Topolinski and managed by 1599963 Ontario ("159 Ontario"), also controlled by Topolinski. Topolinksi hoped to rehabilitate the Debtor's specialty printing and direct mail business and sell it for a profit.

On November 13, 2011, vandals broke into the Debtor's premises, damaged its printing equipment, and breached its secure data room (the "Incident"). Topolinski believed that the Debtor could no longer operate profitably and in the manner it had prior to the Incident due to loss of equipment and the ramifications of the security breach.

Prior to the Incident, Great Northern had issued an insurance policy ("the Policy"), in favor of the Debtor, covering: (1) loss or damage caused by or resulting from a peril not otherwise excluded; and (2) business income loss. Following the Incident, the Debtor submitted a notice of claim seeking payment for the repair or replacement of its equipment and for the loss of its business income.

Topolinski sold the Debtor's business to Instant Web, Inc. on December 5, 2011. The proceeds of the sale were disbursed to Old Aultsville and other secured creditors. The Trustee states that the Debtor has not operated since that date. Dkt. No. 885, pg. 3.

On December 21, 2011, several creditors filed an involuntary petition against the Debtor, initiating this bankruptcy case. The Trustee was appointed on January 5, 2012.

Following the Trustee's appointment, Great Northern denied coverage pending a further investigation of the Incident. On February 25, 2013, the Trustee instituted litigation against Great Northern in the Superior Court of New Jersey Gloucester County (Case No. GLO-L-315-13). The Trustee sought a declaratory judgement that: (i) the loss from the Incident is covered by the Policy; (ii) the Debtor's Estate is entitled to payment of the amount owed for the damaged physical assets; and (iii) the Debtor's Estate is entitled to payment of the business income loss claim pursuant to an appraisal process set forth in the insurance policy.

Based upon information learned during discovery in the Superior Court litigation, Great Northern filed the Motion for leave under the Barton Doctrine to file a counterclaim and third-party complaint against the Trustee, alleging fraud, misrepresentation, and concealment. The Trustee opposed the Motion and filed a Cross-Motion to bar Great Northern from asserting affirmative defenses.

## II. Discussion

### A. Great Northern's Argument

Great Northern alleges that the Trustee "embarked upon a pervasive pattern and practice of misrepresentations and concealment in support of her claim for insurance proceeds" in the Superior Court litigation. Dkt. No. 863, pg. 1. Specifically, Great Northern claims: (i) the Trustee misrepresented the amount of the Debtor's proof of loss in the Superior Court Litigation, inflating it by millions of dollars by stating that the Debtor continued to incur expenses from November 14, 2011 to November 14, 2014; (ii) the Trustee attempted to conceal records in the Superior Court litigation; (iii) the Trustee misrepresented and concealed information related to Old Aultsville - that from November 14, 2011 through November 14, 2014, the Debtor continued

to incur expenses in the amount of $11,787,582 for interest on a loan from Old Aultsville and that the Trustee misrepresented the principal loan balance ($22.1 to $24.9 million rather than the actual $14,461,680); (iv) the Trustee misrepresented and concealed records related to management fees - that the Debtor continued to incur expenses for management fees in the amount of $13,485,00; and (v) the Trustee represented to the Superior Court that Topolinski had no "ownership interest in Old Aultsville LLC" when the Trustee's allegedly concealed records demonstrate that Topolinski was in fact "responsible" for Old Aultsville.

Great Northern asserts that the allegations in its proposed counterclaim and third-party complaint are pleaded with enough sufficiency to meet the "not without foundation" standard necessary under Barton v. Barbour, 104 U.S. 126 (1881), and In re Vistacare Grp., LLC., 678 F.3d 218 (3d Cir. 2012).

### B. The Trustee's Argument

The Trustee argues that Great Northern does not meet its burden under the Barton Doctrine. The Trustee claims that Great Northern fails to: (i) make a prima facie case of insurance fraud against the Trustee and her agents; (ii) prove that a balancing of the interests militates in its favor; and (iii) prove that the Superior Court has special expertise on the issues raised in the proposed claims.

The Cross-motion argues that if Great Northern were to assert affirmative defenses similar to the counts it seeks to bring in its counterclaim, it would lead to the same result – depletion of the Bankruptcy Estate.

### III. Analysis

The Barton Doctrine provides that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." Barton, 104 U.S. at 127. See also VistaCare, 678 F.3d 218. In Barton, the Supreme Court explained that before a party could sue a

receiver in a court other than the court appointing the receiver, the appointing court must approve such action to ensure a "consistent and equitable administration" of receivership property. Barton, 104 U.S. 126. See also Vistacare, 678 F.3d at 224. Although the facts in Barton involved an equity receiver, courts have extended the Barton Doctrine to bankruptcy trustees. Vistacare, 678 F.3d at 225. See also Vass v. Conron Bros. Co., 59 F.2d 969 (2nd Cir. 1932). Much like a receiver, a trustee is appointed by the court to oversee the debtor's estate, making him an "officer of the court." Vistacare, 678 F.3d at 225. Thus, the court in Vistacare held that a party seeking to sue a trustee for acts taken in his official capacity must first obtain permission from the bankruptcy court. Id.

The courts in both Barton and Vistacare highlighted the importance and purpose of the doctrine. The Supreme Court in Barton explained that the requirement of seeking leave to file suit would prevent "usurpation of the powers and duties which belonged exclusively to [the appointing] court" and protect "the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities." Barton, 104 U.S. at 136. Essentially, the Barton Doctrine exists to: (i) keep the originating court, or the bankruptcy court, informed of related proceedings; and (ii) protect the estate from potentially being depleted by a related claim against a trustee. The court in Vistacare also highlighted several rationales for the Barton Doctrine unrelated to the potential harm of the estate. For example, (i) a trustee's duties to the estate could be impeded by the burden of having to defend against suits in other courts; (ii) without this extra protection from the Barton doctrine, some may be discouraged to serve as trustees; and (iii) the doctrine allows the bankruptcy court to monitor the work of the trustee and ensure that the trustee is satisfying his obligations. Vistacare, 678 F.3d at 230.

A party seeking leave to file litigation outside of the appointing forum against a bankruptcy trustee for acts committed in her official capacity "must make a prima facie case

5

against the trustee, showing that its claim is not without foundation." Id. at 232. The "not without foundation" standard is similar to the standard under a motion to dismiss, but has a "greater degree of flexibility." Id. Courts balance the interests of all parties involved and whether the other tribunal may have expertise regarding the issues in the proposed suit. See id. at 233. Generally, a court should grant leave to a party unless it is clear from the record that the proposed suit is wholly lacking in factual or legal support. Id. See also Anderson v. U.S., 520 F.2d 1027, 1029 (5th Cir. 1975).

Great Northern argues that it should be allowed to file a counterclaim against the Trustee alleging that the Trustee engaged in fraud. Under the New Jersey Insurance Fraud Protection Act (the "IFPA") a person or practitioner engages in fraud if he: (i) presents or causes to be presented any written or oral statement as part or in support of a claim for payment or other benefit pursuant to an insurance policy, and knows that the statement contains any false or misleading information concerning any fact or thing material to the claim; (ii) prepares or makes any written or oral statement that is intended to be presented to any insurance company or any claimant thereof in connection with or in support of any claim for payment or other benefit pursuant to an insurance policy, and knows that the statement contains any false or misleading information concerning any fact or thing material to the claim; (iii) conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled. N.J.S.A. 17:33A-4(a)(1-3). Great Northern's claim of fraud arises from two general theories: concealment; and misrepresentation. The Court denies Great Northern's Motion for the following reasons.

### A. Concealment

Great Northern alleges that the Trustee concealed or knowingly failed to disclose documents that showed the Trustee's claim should be significantly less than asserted. The Trustee states that she did not turn over documents she thought were either irrelevant or privileged. Great Northern discovered the existence of possibly relevant documents by reviewing fee applications that included time entries mentioning such documents. The Trustee asserted that the documents were privileged. A Special Master was appointed to resolve the issue, and ultimately ordered the Trustee to turn over documents; and the Trustee complied. The Trustee and her professionals did not conceal documents, but rather asserted privilege when documents were requested by Great Northern. There was a dispute over which documents were discoverable. The Special Master compelled production of those documents, which Order was approved by the Superior Court. The Trustee complied with that Order. Asserting privilege or lack of relevance does not equate to concealment, but instead is a discovery dispute. Once the Special Master and Superior Court ruled in Great Northern's favor, the Trustee produced documents. Therefore, the Court finds no basis for Great Northern to proceed with a complaint based upon concealment of documents.

### B. Misrepresentations

Under New Jersey Law, a plaintiff asserting a claim of fraud must show the misrepresentation of a fact that exists at or before the time the misrepresentation in made. See Suarez v. Eastern Int'l College, 428 N.J. Super. 10, 29 (App. Div. 2012). A statement of opinion does not constitute fraud. See, eg., Johnson v. Drager Safety Diagnostics, Inc. 594 F. App'x 760, 766 (3d Cir. 2014); Suarez, 428 N.J. Super. at 29.

Therefore, a difference of opinion between an insurer and an insured on the scope of coverage under an insurance policy does not give rise to a finding that one of the parties made a

misrepresentation, even if that party's opinion was erroneous. See Baughman v. United States Liability Ins. Co., 662 F. Supp. 2d 386, 400-01 (D.N.J. 2009); Biscayne Cove Condo. Ass'n v. QBE Ins. Corp., 971 F. Supp. 2d 1121, 1145 (S.D. Fla. 2013); Manpower Inc. v. Ins. Co. of Pa., 2010 WL 3809695, at *3 (E.D. Wis. Sept. 24, 2010). The Trustee's projections regarding loss of income and management fees may have been inflated, but that does not equate to misrepresentation and ultimately fraud.

Great Northern argued that false projections can rise to the level of misrepresentation, citing CPS MedManagement LLC v. Bergen Regional Medical Ctr., L.P., 940 F. Supp.2d 141 (D.N.J. 2013) and Protocol Electronics, Inc. v. Transolutions, Inc., 2005 WL 1106132, at *1-9 (D.N.J. Apr. 29, 2005) in support of its argument. Both CPS and Protocol are distinguishable from this case and actually support the Trustee's argument.

In CPS, a hospital alleged fraud against a contractor arising from the contractor's agreement to manage the hospital's pharmacy. 940 F. Supp.2d at 144. The parties disagreed on whether the contractor's statements about cost savings were actionable, false representations of fact - with the hospital claiming that these statements were not mere projections, citing to an email as proof of this. Id. at 160. The court stated, "the defendant must have no intention at the time he makes the statement of fulfilling the promise...." Id. (citing Capano v. Borough of Stone Harbor, 530 F. Supp. 1254, 1264 (D.N.J. 1982)). The court held that the contractor did not commit fraud. It held that the contractor's projections were not fully explained or clear as to how they were determined, but "the lack of detail only confirm[ed] that these were normal financial estimates-precisely the kind of representations held to be not actionable as a matter of law." Id. The court also noted that when a professional's projections fall short, as they sometimes do, they cannot be "properly called liars." Id.

In addition, the court in <u>Protocol</u> held that Protocol's evidence did not come close to meeting the "clear and convincing" evidentiary standard necessary to prove fraud and intent to defraud in that jurisdiction. 2005 WL 1106132, at *7. In <u>Protocol</u>, Protocol entered into an agreement with Transolutions for the development of an internet-based transcription software program. While the agreement was in effect, Transolutions entered into a separate agreement with Cerner under which Transolutions became licensed to utilize a Cerner program called Millennium Objects. Protocol alleged that Transolutions engaged in fraud by "falsely, maliciously and fraudulently terminat[ing] plaintiff's rights under the agreement" by sharing Protocol's and Transolutions' shared software program with Cerner, when Transolutions dealt with Cerner "for the licensing of the TMS system rights, related directly to and violat[ing] the revenue sharing of the parties under the Agreement." <u>Id.</u> at *5. Protocol relied on Transolutions' internal emails concerning large rewards as evidence of fraud. <u>Id.</u> at *8. The court held that these emails were simply predictions and puffery, stating that "financial projections are considered to be statements of opinion not fact…" <u>Id.</u>

Similar to <u>CPS</u> and <u>Protocol</u> the Trustee made projections concerning management fees, the proof of loss, and interest owed on the Old Aultsville loan. Those projections were based on a theory of recovery she developed in consultation with her professionals. The Trustee's theory was that, if the Incident had not occurred, Topolinski would not have sold, and the loan would not have been paid down. While the Trustee's theory may not have been fully explained to Great Northern, and may ultimately not be successful, the Court sees no fraud or misrepresentation in pursuing such theory. Great Northern points to internal memoranda and a draft complaint as evidence of fraud. Dkt. No. 863 at 8. Specifically, Great Northern argues that an internal memo, dated July 27, 2012, reflects that no interest accrued on the loan after December 1, 2011, and that a draft complaint alleging that DGI overpaid management fees in the amount of $1,426,364.90 is

9

inconsistent with the proof of loss statements made in the Trustee's Complaint. Id. at 7, 8. See also Dkt. No. 863, Counterclaim ¶¶ 99-102, 86-95. These documents, although potentially appearing inconsistent, show that the Trustee was developing various strategies to recover assets in the case. It is not uncommon for a litigant, including a trustee, to hash out strategies and test different theories before finalizing a course of action and filing a complaint. Moreover, parties frequently draft complaints, only to later decide not to file and pursue them for a number of reasons. Therefore, Great Northern has not alleged sufficient facts to conclude that the Trustee has not made any misrepresentation to constitute fraud.

### C. The Trustee's Cross-Motion to Bar Affirmative Defenses

Motions to strike or bar affirmative defenses should not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proven in support of defense and which are inferable from pleadings. See In re Kmart Corp., 318 B.R. 409 (Bankr. N.D. Ill. 2004). If the defense is grounded in fraud, the circumstances constituting the fraud or mistake must be stated with particularity. Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). See also Kmart, 318 B.R. at 414.

To succeed under an affirmative defense of fraud, Great Northern must prove the same elements of fraud outlined in the IFPA, as discussed above. Since the Court ruled that Great Northern cannot prevail under the theory of fraud, Great Northern's affirmative defense of fraud would also not be successful.

Allowing Great Northern to assert an affirmative defense of fraud would deplete the Estate. It would be a waste of the Estate's assets and reduce the distribution to unsecured creditors if the Trustee were forced to defend the same allegations of fraud brought as an affirmative defense, when the Court has already determined that Great Northern cannot prevail on the same claims as part of a counterclaim.

### III. Conclusion

For the foregoing reasons, Great Northern's Motion is DENIED, and the Trustee's Cross-motion is GRANTED.

Dated:  June 26, 2017

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE